UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| BRYAN H. PORTER JR, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24-cv-04240-SLD-RLH |
| ) | |
| DORA VILLAREAL, STATE'S ) | |
| ATTORNEY, and ROCK ISLAND ) | |
| COUNTY STATE'S ATTORNEY'S ) | |
| OFFICE, ) | |
| ) | |
| Defendants. ) | |

ORDER

Before the Court is Defendants Dora Villareal[1] and Rock Island County State's Attorney's Office's ("RICSAO") Motion to Dismiss Dora Villareal as Defendant and to Dismiss Intentional Infliction of Emotional Distress Claim ("Motion to Dismiss"), ECF No. 18.  For the reasons that follow, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

## BACKGROUND[2]

*Pro se* Plaintiff Bryan H. Porter Jr began his employment with the RICSAO as a student prosecutor in the summer of 2019.  Upon graduating law school, he returned to the RICSAO as a paralegal in October 2021.[3]  Around March 22, 2022, he requested paid time off ("PTO") to attend a funeral in Chicago.  The request was initially granted by his supervisor, Assistant State's

---

[1] The parties spell State's Attorney Dora Villareal's last name differently. *Compare, e.g.*, Am. Compl. 1, ECF No. 16 ("Villareal"), *with* Answer Am. Compl. ¶ 30, ECF No. 17 ("Villarreal").  The Court uses Plaintiff's spelling—Villareal—to be consistent with the Amended Complaint.

[2] At the motion to dismiss stage, the court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).  Unless otherwise noted, the factual background is drawn from Plaintiff's Amended Complaint.

[3] Plaintiff alleges that he was hired as a paralegal in October 2022, Am. Compl. 2, but this date is inconsistent with his allegations that he was fired from that position on July 13, 2022, *id.* at 3–4; *see also* Answer Am. Compl. ¶¶ 12, 54 (denying that Plaintiff "was employed in October 2022" and admitting that he was sent an email "on July 13, 2022" as part of his termination).  The Court assumes that Plaintiff meant October 2021 instead of October 2022.

1

Attorney ("ASA") Patricia Castro, and Plaintiff took the PTO. On March 31, ASA Castro entered Plaintiff's office to inform him that his PTO request had been erroneously approved and that the pay for that time off would be taken out of his current payroll period. In response, Plaintiff asserted that ASA Castro should be penalized for this mistake instead of him. ASA Castro then "berated [him] with a string of racially charged insults," including "ungrateful," "uncontrollable," "belligerent," and "hostile." Am. Compl. 3, ECF No. 16. The next day, he reported the incident to Human Resources and ASA Castro held a meeting with the RICSAO leadership in which she stated that Plaintiff "was a danger to the office and should be immediately terminated." *Id.* The following week, Plaintiff notified State's Attorney ("SA") Dora Villareal of ASA Castro's racially charged insults. SA Villareal denied that ASA Castro would make those remarks and never followed up with ASA Castro regarding her conduct with Plaintiff on March 31.

From April 1 until July 12, ASA Castro refused to talk to Plaintiff in person instead only communicating through email. She locked her office when she was not around, preventing him from accessing files, and did not include him on important meetings with the RICSAO's Civil Department, negatively impacting his work and mood. Plaintiff removed decorations from his office to demonstrate that he no longer felt part of the office.

On May 19, Plaintiff was called into a Corrective Action Meeting about his tardiness and attendance. ASA Castro stated that these issues were brought to her attention by other members of the office. Plaintiff stated that she was instead motivated by his race and gender as a black man. He reported the notice of the Corrective Action Meeting to Human Resources. On July 8, he was again called to a Corrective Action Meeting. This time the meeting was with ASA Castro, SA Villareal, and Second SA Heidi Weller. The purpose of the meeting was to discuss

his "aggressive" work demeanor. *Id.* at 4. He stated that this meeting was also racially charged and unprofessional, again reporting it to Human Resources. On July 13, 2022, he was invited to a meeting with SA Villareal via an email with a blank subject line—he did not attend the meeting. Later that day, SA Villareal approached him and asked him to come to her office—he refused. SA Villareal then returned with a termination letter and two police officers to escort him out of the building. The police escort took place in front of his coworkers and was not in accordance with the RICSAO's termination policies.

Plaintiff filed a complaint with the Equal Employment Opportunity Commission on or around May 5, 2023, and his right-to-sue notice was issued September 19, 2024. On December 23, 2024, Plaintiff filed a four-count Complaint, ECF No. 1.[4] Following Defendant Villareal's Answer, ECF No. 10, Plaintiff sought the Court's leave to file the Amended Complaint, Mot. Leave Am. Compl., ECF No. 13, which was granted despite Defendant's opposition thereto, *see* May 22, 2025 Text Order (citing Fed. R. Civ. P. 15(a)(2)). The Amended Complaint clarifies that Plaintiff is asserting claims against both SA Villareal and the RICSAO, specifically: (1) race discrimination under Title VII, 42 U.S.C. §§ 2000e–2000e-17; (2) gender discrimination under Title VII; (3) wrongful termination; and (4) intentional infliction of emotional distress ("IIED").

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants move to dismiss Villareal as a Defendant and to dismiss the IIED claim as time barred. *See generally* Mot. Dismiss. Plaintiff responds that Villareal acted outside the scope of her employment, making her

---

[4] Plaintiff alleges that he opened the right-to-sue notice on September 23, 2024. Am. Compl. 1. He did not file his Complaint until December 23, 2024—ninety-one days later. *See* Compl. 9 (indicating that the Complaint was signed on "12/23/2024"). An argument that a claim under Title VII, 42 U.S.C. §§ 2000e–2000e-17, is untimely is an affirmative defense. *See, e.g.*, *Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 701 (N.D. Ill. 2020). Defendants do not argue that Plaintiff's Title VII claims are untimely, so the Court does not resolve whether the claims are timely.

3

individually liable under Title VII, and asserts that the statute of limitation applicable to his IIED claim should be equitably tolled. *See generally* Resp. Mot. Dismiss, ECF No. 20.

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint's allegations are plausible when there is "enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claims. *Twombly*, 550 U.S. at 556. A court must take "[t]he complaint's well-pleaded factual allegations, though not its legal conclusions, . . . [as] true," *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019 (7th Cir. 2013), and "draw all inferences in the light most favorable to the nonmoving party," *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014).

### II. Analysis

The Motion to Dismiss makes two primary arguments: (1) SA Villareal should be dismissed as a Defendant, Mot. Dismiss ¶¶ 3–6; and (2) the IIED claim is time barred, *id.* ¶¶ 7–8.

#### A. SA Villareal as Defendant

Defendants advance three related arguments in favor of dismissing SA Villareal as a Defendant: (1) "[s]upervisors cannot be held individually liable under Title VII," *id.* ¶ 3 (citing *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999)); (2) official-capacity claims asserted against supervisors are redundant when the employing entity is also sued, *id.* ¶¶ 4, 6 (first citing *Wilson v. Civil Town of Clayton*, 839 F.2d 375, 382 (7th Cir. 1988); and then citing *Burris v. Cullinan*, No. 09-3116, 2011 WL 3207205, at *4 (C.D. Ill. July 27, 2011)); and (3)

certain remedies under Title VII are available only from employers, not individuals, *id.* ¶ 5 (citing *Jendusa v. Cancer Treatment Ctrs. of Am., Inc.*, 868 F. Supp. 1006, 1015 (N.D. Ill. 1994)). Plaintiff concedes that *Silk* "is consistent with the [d]octrine of [r]esponde[a]t [s]uperior (vicarious liability) in its application to employment discrimination cases," but asserts that the Court should instead follow a Fifth Circuit case and an Illinois Supreme Court case which assertedly provide that a supervisor who sufficiently deviates from her scope of employment may still be held liable. Resp. Mot. Dismiss 2–3 (first citing *Hamilton v. Rodgers*, 791 F.2d 439 (5th Cir. 1986); and then citing *Pyne v. Witmer*, 543 N.E.2d 1304 (Ill. 1989)).

In the Seventh Circuit, supervisors are not individually liable under Title VII, *see, e.g.*, *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 380 (7th Cir. 2011), and Plaintiff's citations contradicting this principle are either outdated or inapposite. The Court is bound by the Seventh Circuit's interpretation of federal statutes such as Title VII and may not adopt contrary persuasive authority. Even if the Court had a blank slate to consider the Fifth Circuit's decision in *Hamilton*, that decision has been narrowed by the Fifth Circuit itself. *See Harvey v. Blake*, 913 F.2d 226, 227–28 & n.2 (5th Cir. 1990) (clarifying that "any recovery to be had must be against [the supervisor] in her official, not her individual, capacity" and that *Hamilton* was "nonauthoritative" to the extent it conflicted with that rule). As to Plaintiff's reliance upon the Illinois Supreme Court's decision in *Pyne*, that case analyzed *respondeat superior* under Illinois law, and Title VII is a federal statute which modifies traditional *respondeat superior* principles, *see, e.g.*, *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998) ("[W]hile Title VII's definition of 'employer' does include the term 'agent,' Congress intended only for employers to be liable for their agent's actions under the traditional *respondeat superior* doctrine, not for agents to be personally liable."). Illinois law on *respondeat superior* does not

5

displace binding interpretations of Title VII itself. This Court is bound by the Seventh Circuit's interpretations of Title VII, such that SA Villareal may not be held liable in her individual capacity under that statute.

Defendants assert that "[i]t appears on the face of the Complaint that Plaintiff has sued SA Villareal in her official capacity." Mot. Dismiss ¶ 4. If Plaintiff intended to name SA Villareal in her official capacity instead of her individual capacity, the Title VII claims against her would still need to be dismissed. A suit against an employee in her official capacity is duplicative of a suit against the employer itself. *Rose v. Ill. Dep't of Corr.*, No. 3:24-cv-00448-GCS, 2025 WL 295734, at *2 (S.D. Ill. Jan. 23, 2025) (citing *Thanongsinh v. Bd. of Educ.*, 462 F.3d 762, 771 n.7 (7th Cir. 2006) (affirming dismissal of an individual defendant sued in his official capacity as duplicative of claim against the employer defendant)). Therefore, it is redundant to sue SA Villareal in her official capacity along with the RICSAO. The Title VII claims against SA Villareal must be dismissed.

However, Defendants' assertion that Plaintiff is intending to bring only official capacity claims is essentially an assumption based on a narrow reading of a *pro se* pleading. Plaintiff does not use the terminology of official or individual capacity. The Amended Complaint's caption lists "Dora Villareal, State's Attorney," Am. Compl. 1 (capitalization altered), and its introductory paragraph notes that "Dora Villareal, State's Attorney of the [RICSAO], AND the [RICSAO]" are named as Defendants, *id.* This could indicate that Plaintiff is suing SA Villareal in her official capacity—courts within the Seventh Circuit used to assume as much for "[s]ection 1983 actions that fail[ed] to designate expressly the nature of the suit through utilization of the terms 'official capacity' or 'individual capacity,' but which list[ed] in the case name of the complaint the official's job title, [*e.g.*], 'Gerald M. Sonquist, Kenosha County Sheriff' and 'Carl

6

Thomas, Sheriff.'" *Kolar v. Sangamon County*, 756 F.2d 564, 568 (7th Cir. 1985). But making such an assumption based solely on job titles is no longer warranted. *See Hill v. Shelander*, 924 F.2d 1370, 1373–74 (7th Cir. 1991); *accord Davis v. City of Chicago*, 669 F. App'x 305, 306 (7th Cir. 2016). Plaintiff's filings instead indicate that he seeks to sue SA Villareal in her individual capacity. He states that "Defendant [SA] Villareal deviated as a supervisor so much so that her conduct makes her individually liable for the damages caused" and that "Defendant [SA] Villareal ignored [the RICSAO's] policies and terminated [Plaintiff]." Resp. Mot. Dismiss 3. He is not alleging that SA Villareal simply performed her duties as a state official and followed RICSAO policy but rather that SA Villareal acted contrary to those policies, thereby exposing her to individual liability for her personal involvement in the alleged misconduct.

  The potential for an individual-capacity claim is important for Count III, Plaintiff's wrongful termination claim. Am. Compl. 7–8. The cause of action invoked in this count is unclear. But "[p]laintiffs need only plead facts, not legal theories, in their complaints," *R3 Composites Corp. v. G&S Sales Corp.*, 960 F.3d 935, 941 (7th Cir. 2020) (quotation marks omitted), and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks omitted). In Count III, Plaintiff asserts that he "is a member of a protected class as a black man," that SA Villareal "knew of [his] protected status," that "he was treated differently from similarly situated employees outside his protected class" and that his "race and sex/gender w[ere] a major factor in his termination." Am. Compl. 7–8. He also alleges that SA Villareal requested the police escort him out of the office and that she did not investigate his allegations that ASA Castro exhibited bias on the basis of race and gender in her interactions with him. *Id.* at 3–4. These allegations are consistent with an equal protection claim under 42

U.S.C. § 1983 against SA Villareal in her individual capacity for her personal involvement in the allegedly discriminatory termination of Plaintiff. *See, e.g.*, *de Lima Silva v. Dep't of Corr.*, 917 F.3d 546, 559–64 (7th Cir. 2019) (reversing the grant of summary judgment in favor of one individual defendant because the plaintiff "raised a triable issue of fact as to whether the nondiscriminatory reasons defendants gave for terminating plaintiff were pretextual" but affirming the grant of summary judgment in favor of the other individual defendants because the "plaintiff did not develop any arguments about their personal involvement in the decision to discharge him"). The Court therefore declines to altogether dismiss SA Villareal as a Defendant.

### B. IIED Claim

Defendants move to dismiss the IIED claim as time barred. Mot. Dismiss ¶¶ 7–8. Plaintiff concedes that his IIED claim would normally be time barred, but requests that the Court equitably toll the statute of limitations. Resp. Mot. Dismiss 3–4. After determining the applicable statute of limitations and source of law, the Court addresses whether to equitably toll the statute of limitations and whether the discovery rule could apply to Plaintiff's claim.[5]

#### 1. Source of Statute of Limitations

Plaintiff invokes the Court's supplemental jurisdiction for his IIED claim, Am. Compl. 2, and the Court follows the parties' lead in analyzing this claim under Illinois law, *see, e.g.*, *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). Defendants assert that because the RICSAO is a local public entity and SA Villareal is a local public employee, "[t]he

---

[5] Defendants' argument that Plaintiff's IIED claim is time barred is an affirmative defense. *See* Fed. R. Civ. P. 8(c)(1). "[A] plaintiff's complaint need not anticipate or refute potential affirmative defenses." *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636, 640 (7th Cir. 2022). However, some affirmative defenses "may be raised in a motion to dismiss if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense." *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (quotation marks omitted). "[D]ismissal under Rule 12(b)(6) on the basis of a limitations defense may be appropriate when the plaintiff effectively pleads h[im]self out of court by alleging facts that are sufficient to establish the defense." *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006).

8

one-year statute of limitations in the Illinois Local Governmental and Governmental Employees Tort Immunity Act applies." Mot. Dismiss ¶ 7; *see also* 745 ILCS 10/8-101 (setting forth a one-year statute of limitations for local public entities or employees). Plaintiff does not respond to Defendants' assertion but acknowledges that his claim would be barred under Illinois's two-year statute of limitation for personal injury torts. *See* Resp. Mot Dismiss 3 (citing 735 ILCS 5/13-202 (setting forth a two-year statute of limitations for personal injury torts not involving local public entities or employees)). Because Plaintiff's IIED claim is tied to his termination on July 13, 2022, and he did not file his Complaint until December 23, 2024, his claim would be time-barred under either a one-year or two-year statute of limitations.

The remaining threshold question is whether federal or state law would control the application of doctrines like equitable tolling. Plaintiff invokes cases applying federal equitable tolling law. *See, e.g.*, Resp. Mot. Dismiss 3 (citing *Shropshear v. Corp. Couns. of Chi.*, 275 F.3d 593, 595 (7th Cir. 2001)). However, statutes of limitations are substantive matters which should be decided under state law. *Hollander v. Brown*, 457 F.3d 688, 692 (7th Cir. 2006) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). This includes "rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel." *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 933 (7th Cir. 2018) (quotation marks omitted). Therefore, whether Plaintiff may overcome his failure to timely file his IIED claim must be determined according to Illinois law, not federal law.

### 2. Equitable Tolling

Plaintiff argues that despite his due diligence, he was not able to obtain vital information for his claim—only "[t]hrough therapy . . . was [he] able to gain vital information and identify that he had been severely harmed emotionally and psychologically." Resp. Mot. Dismiss 4.

9

Plaintiff's argument and his invocation of "due diligence" is based on federal equitable tolling law. *See id.* at 3 (quoting *Shropshear*, 275 F.3d at 595). However, under Illinois law, equitable tolling applies when "the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum." *Harris v. Renken*, No. 23-1213-JEH-JES, 2023 WL 9004910, at *4 (C.D. Ill. Dec. 28, 2023) (quoting *Clay v. Kuhl*, 727 N.E.2d 217, 223 (Ill. 2000)).

Here, Plaintiff does not assert that Defendants actively misled him or otherwise prevented him from timely filing his claim, nor does he assert that he initially filed in the wrong forum. This leaves only the option that he was prevented from asserting his rights in some extraordinary way, such as "legal disability, an irredeemable lack of information, or situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence." *Id.* (quoting *Ralda-Sanden v. Sanden*, 989 N.E.2d 1143, 1149 (Ill. App. Ct. 2013)). "To qualify as having a legal disability, a plaintiff must be 'entirely without understanding or capacity to make or communicate decisions regarding [his or her] person and totally unable to manage [his or her] estate or financial affairs.'" *Quinn v. Harris*, 230 F. App'x 595, 597 (7th Cir. 2007) (alterations in original) (quoting *Basham v. Hunt*, 773 N.E.2d 1213, 1221 (Ill. App. Ct. 2002)). Plaintiff's argument that he only realized the full extent of his emotional injuries due to therapy is unlike these "extraordinary" barriers because Plaintiff had sufficient understanding and capacity to derive meaningful insights from therapy, knew how he had been treated on July 13, 2022, and knew who had terminated him. Therefore, the Court declines to equitably toll the statute of limitations applicable to Plaintiff's IIED claim.

### 3. Discovery Rule

Cognizant of Plaintiff's *pro se* status, the Court also considers whether his argument could satisfy Illinois's "discovery rule," which postpones the relevant statute of limitations until an injured plaintiff knows or reasonably should know that they have been injured and that the injury was wrongfully caused. *See Harris*, 2023 WL 9004910, at *3 (citing *Golla v. Gen. Motors Corp.*, 657 N.E.2d 894, 898 (Ill. 1995)). When determining if a plaintiff knew or should have known of her injuries, Illinois courts distinguish between injuries caused by sudden traumatic events and those that have a late onset. *Hollander*, 457 F.3d at 692. With sudden traumatic events, because of their force or violence, the law presumes that the plaintiff was put on notice of their injuries and therefore claim. *Id.* "[T]he limitations period does not begin anew simply because a latent condition later may arise from the same occurrence." *Id*. Although victims of sudden traumatic events may only gradually come to understand the extent of their injuries, this may be immaterial because "[t]here is no requirement that a plaintiff must know the full extent of his or her injuries before suit must be brought under the applicable statute of limitations." *Id*. at 693 (alteration in original) (quoting *Clay*, 727 N.E.2d at 222).

Plaintiff argues that it was not until he began seeing a therapist that he was able to obtain vital information and identify that he had been severely harmed emotionally. Resp. Mot. Dismiss 4. However, he alleges that he experienced fear and intimidation on July 13, 2022—the day that he was terminated—which in part motivated him to seek out help from a therapist. Am. Compl. 8. This is unlike late onset cases wherein the victim was not aware of any injuries until much later, allowing plaintiffs to invoke the discovery rule. *See Hollander*, 457 F.3d at 693. While Plaintiff may not have fully understood the scope of his injuries until later, he knew or reasonably should have known that he had been wrongfully injured on July 13, 2022, such that

the Court will not apply the discovery rule. Therefore, Plaintiff's IIED claim must be dismissed as time barred.

### C. Leave to Amend

When a motion to dismiss is granted, a court must decide whether to grant leave to amend, which ordinarily should be granted after the initial dismissal of a claim unless amendment would be futile, among other reasons. *See, e.g.*, *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015). Plaintiff cannot plead additional or different facts that would change SA Villareal's status as his supervisor, as opposed to his employer, nor when he was fired and when he filed his Complaint. Therefore, leave to amend would be futile and is therefore unwarranted. The dismissal of the Title VII claims asserted against SA Villareal and dismissal of Plaintiff's IIED claim as time barred are with prejudice.

### CONCLUSION

Accordingly, Defendants Dora Villareal and Rock Island County State's Attorney's Office's Motion to Dismiss Dora Villareal as Defendant and to Dismiss Intentional Infliction of Emotional Distress Claim, ECF No. 18, is GRANTED IN PART and DENIED IN PART. The Title VII claims asserted against Defendant Dora Villareal are DISMISSED WITH PREJUDICE. Plaintiff's claim for Intentional Infliction of Emotional Distress is also DISMISSED WITH PREJUDICE. Defendant Villareal's Answer is due by September 3, 2025.

Entered this 20th day of August, 2025.

s/ Sara Darrow<br>
SARA DARROW<br>
CHIEF UNITED STATES DISTRICT JUDGE